UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAREN PORTER,          :
          Plaintiff   :
                       :
     v.                :          CIVIL NO. 3:CV-14-105
                       :
                       :          (Judge Conaboy)
J. HOWSON ,ET AL.,     :
          Defendants   :



FILED
SCRANTON

SEP 2 8 2015

PER _____
DEPUTY CLERK

## MEMORANDUM
## Background

Daren Porter, an inmate presently confined at the Victorville
Federal Correctional Institution, Adelanto, California, initiated
this pro se Bivens[1]-type civil rights action.  Plaintiff's action
regards his prior confinement at the United States Penitentiary
Lewisburg, Pennsylvania (USP-Lewisburg).  An Amended Complaint
(Doc. 14) was previously filed.

Named as Defendants are the following USP-Lewisburg officials:
Psychologists Janet Howson and Danielle Mink; Special Investigative
Agent Suzanne Heath; Counselor Matt Edinger; Case Manager Matt
Nicholas; C-Unit Counselor Keith Metzger; as well as Lieutenants

---

[1]  Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition
that "a citizen suffering a compensable injury to a
constitutionally protected interest could invoke the general
federal question jurisdiction of the district court to obtain an
award of monetary damages against the responsible federal
official." Butz v. Economou, 438 U.S. 478, 504 (1978).

1

Randy Johnson and Randy Seeba. Also named as a Defendant is a USP-Lewisburg inmate, George Hall.

Plaintiff states that during January 2012 while housed in a single cell within the USP-Lewisburg Special Management Unit (SMU) Lieutenant Johnson attempted to assign him a cellmate who was a known member of the Gangster Disciples gang.[2] Porter refused the cellmate on the basis that he was to be not be housed with "any Muslims, any Gangster Disciples, any Crips, any Bloods, any Vice Lords, or any Washington D.C. inmates." Doc. 14, p. 4. As a result of his refusal, Porter was allegedly threatened by Johnson that he would receive a "cellmate who would harm him." Id. at p. 5.

The Amended Complaint indicates that Lieutenant Heath had previously agreed that Porter would not be celled with individuals belonging to the above listed groups. However, it is asserted that Heath failed to properly note in Plaintiff's file that he was to be kept separated from such inmates. After filing a grievance regarding the incident involving Lieutenant Johnson, Counselor Edinger purportedly told Plaintiff that although the alleged Gangster Disciple member would not be moved into his cell, Porter would be receiving a cellmate, "anyone that they wanted him to have." Id.

---

[2] The Amended Complaint notes that during the relevant time period, Plaintiff was recovering from a broken jaw and his jaw was wired shut. He was also on pain and "psych" medication which purportedly rendered him unable to defend himself from other prisoners. Doc. 14, p. 5.

A few days later, Case Manager Nicholas allegedly informed Plaintiff that he was being moved to another cell block. Porter was placed in a cell with Inmate George Hall, who is described as being a Muslim. On January 15, 2012, Plaintiff was taken to the prison infirmary for an x-ray. Upon his return, Hall purportedly would not allow Porter back into the cell.

Hall allegedly told Case Manager Metzger and Psychologist Howson that he felt "homicidal and suicidal" and that because he had discovered that Plaintiff was a sex offender he would kill his cellmate if the prisoner was placed backed into their cell.[3] Id. at p. 6. Despite this threat, Plaintiff was placed back into the cell based upon Howson's evaluation. The Amended Complaint contends that Howson failed to follow proper prison procedure and should have had Hall transferred to an observation cell.[4]

Later, as Plaintiff was sleeping he was allegedly attacked by Hall, who bit off his nose and ear and also broke his jaw and a rib.[5] See id. at p. 7. Lieutenant Seeba responded to the incident

---

[3] Porter adamantly denies being a sex offender. The Plaintiff indicates that Psychologist Mink previously filed a false report (later retracted) which describes him as being a sex offender. Despite the retraction, there was an unfounded rumor in the SMU that Porter was a sex offender.

[4] Defendants have submitted evidence showing that the incident involving Metzger and Howson actually transpired on January 9, 2012 and that Hall's assault on the Plaintiff took place on January 15, 2012.

[5] A document submitted by defendant confirms Hall bit
(continued...)

3

with a crew of other officers. Inmate Hall refused an order by

Seeba to submit to restraints and then attempted to smother the

Plaintiff with a mattress. Although Hall continued his assault,

Seeba allegedly refused to allow the cell door to be opened.

Rather, Defendant Seeba elected to disperse numerous rounds of tear

gas/pepper spray into the cell. The Amended Complaint seeks an

award of compensatory and punitive damages.

Presently pending is Defendants' motion to dismiss and/or in

the alternative for summary judgment. See Doc. 26. The opposed

motion is ripe for consideration.

## Discussion

### Motion to Dismiss

Defendants' pending dispositive motion is supported by

evidentiary materials outside the pleadings. Federal Rule of Civil

Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c),
> matters outside the pleading are presented to
> and not excluded by the court, the motion must
> be treated as one for summary judgment under
> Rule 56. All parties must be given reasonable
> opportunity to present all the material that is
> pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials

accompanying the Defendants' motion. Thus, their motion will be

---

[5](...continued)
Plaintiff's nose and chewed part of his ear off. See Doc. 38, p.
28.

4

treated as solely seeking summary judgment. See <u>Latham v. United</u>
<u>States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to
dismiss has been framed alternatively as a motion for summary
judgment such as in the present case, the alternative filing "is
sufficient to place the parties on notice that summary judgment
might be entered.")

**<u>Summary Judgment</u>**

Summary judgment is proper if "the pleadings, the discovery
and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the
movant is entitled to a judgment as a matter of law." Fed. R. Civ.
P. 56(c); <u>See</u> <u>also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d
Cir. 2001). A factual dispute is "material" if it might affect the
outcome of the suit under the applicable law. <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is
"genuine" only if there is a sufficient evidentiary basis that
would allow a reasonable fact-finder to return a verdict for the
non-moving party. <u>Id</u>. at 248. The court must resolve all doubts
as to the existence of a genuine issue of material fact in favor of
the non-moving party. <u>Saldana</u>, 260 F.3d at 232; <u>see</u> <u>also</u> <u>Reeder v.</u>
<u>Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992).
Unsubstantiated arguments made in briefs are not considered
evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984
F.2d 1359, 1370 (3d Cir. 1993).

5

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Verbal Harassment**

Defendants initially contend that the alleged verbal threats by lieutenant Johnson do not rise to the level of a constitutional violation. See Doc. 35, p. 25. As previously discussed, the Amended Complaint contends that as the result of Porter's refusal to accept a cell mate Lieutenant Johnson allegedly threatened the

6

Plaintiff that he would receive a "cellmate who would harm him."
Doc, 14, p. 5.

Defendants argue that since there are no allegations that
Lieutenant Johnson was either involved in the subsequent decision
to assign Hall and Porter as cellmates or participated in the
response to the January 15, 2015 assault by Hall, the allegation of
verbal threats by said Defendant does not set forth a viable claim
of constitutional misconduct.

The use of words generally cannot constitute an assault
actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033 n.7
(2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa.
1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993)
("Mean harassment . . . is insufficient to state a constitutional
deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp.
185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to
a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer
do not, even if true, amount to constitutional violations.
Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal
abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130
(3d Cir. 1986) (Mem.). A constitutional claim based only on verbal
threats will fail regardless of whether it is asserted under the
Eighth Amendment's cruel and unusual punishment clause, see
Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth
Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying

7

them, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).  Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient.  See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008);  Wright v. O'Hara, 2004 WL 1793018 *7  (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that the verbal harassment allegedly voiced against Porter by Lieutenant Johnson was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas.  More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior.  Furthermore, the Amended Complaint is devoid of any facts which could show that Johnson requested, directed or had any personal involvement whatsoever in the subsequent decision to cell Hall and Plaintiff together.

Given the circumstances described by Plaintiff, the purported verbal remarks attributed to Defendant Johnson, although perhaps offensive to Porter, were not of such magnitude to shock the

8

conscience as contemplated by this Court in  <u>S.M. v. Lakeland</u>
<u>School District</u>, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and
thus, did not rise to the level of a constitutional violation.
Summary judgment will be granted in favor of Lieutenant Johnson.

**Personal Involvement**

Defendants next argue that there is no basis for liability
with respect to the claims asserted against Defendants Edinger,
Metzger, and Nicholas because the Amended Complaint fails to allege
personal involvement by those officials in any constitutional
violations.  <u>See</u> Doc. 35, p. 26.

A plaintiff, in order to state an actionable civil rights
claim, must plead two essential elements:  (1) that the conduct
complained of was committed by a person acting under color of law,
and (2) that said conduct deprived the plaintiff of a right,
privilege, or immunity secured by the Constitution or laws of the
United States.  <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628,
638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135,
1141-42 (3d Cir. 1990).[6]

Federal civil rights claims cannot be premised on a theory of
<u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207
(3d Cir. 1988).  Rather, each named defendant must be shown, via
the complaint's allegations, to have been personally involved in

---

[6]  Also named as Defendant in this matter is Inmate George
Hall.  Since there is no assertion that Hall was acting under color
of law or was involved in a conspiracy with any correctional
officers, there is no basis for civil rights liability against said
Defendant in this <u>Bivens</u> action.  Accordingly, <u>sua</u> <u>sponte</u> dismissal
will be granted in favor of Defendant Inmate Hall.

the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).

After filing a grievance regarding the incident involving Lieutenant Johnson, Counselor Edinger purportedly told Plaintiff

that although the Gangster Disciple prisoner would not be moved into his cell, he would be receiving a cellmate, that they would select. Thereafter, Case Manager Nicholas allegedly informed Plaintiff to pack up his belongings because he was being moved to another cell block. Porter was subsequently placed in a cell with Inmate Hall.

Given the liberal standards applied to pro se litigants the assertion that Plaintiff's cell mate would be someone that they wanted him to have arguably implies that Edinger was involved in the selection of Plaintiff's cell mate. Accordingly, the personal involvement requirement will be deemed satisfied with respect to Edinger.

However, since the Amended complaint does not set forth any fact which support a finding that Nicholas was involved in the selection of Hall as Porter's cell mate the personal involvement mandate of Rode has not been satisfied with respect to said Defendant. The mere assertion that Nicholas told Plaintiff to pack up his belongings because he was being moved to another cell does not adequately allege personal involvement by Nicholas in any unconstitutional act. Summary judgment will be granted in favor of Defendant Case Manager Nicholas on the basis of lack of personal involvement.

Hall allegedly told Case Manager Metzger and Psychologist Howson that he felt homicidal and suicidal and because he found out Plaintiff was a sex offender he would kill his cellmate if the prisoner was returned to their cell. After Howson conducted an

11

evaluation, the Plaintiff was nonetheless placed back in the same cell as Hall.

It is undisputed that Metzger requested a psychological consultation for Hall and it was Psychologist Howson who made the determination that Hall and Porter could be celled together. Based upon those undisputed facts, there is no basis for liability against Case Manager Metzger as it was not his decision to allow Hall and Porter to remain housed together and it was appropriate for him to defer to Howson's professional judgment. Defendant Metzger's request for entry of summary judgment will be granted since there are no factual assertions to support a claim that he failed to protect Plaintiff's safety or otherwise violated the inmate's constitutional rights.

**Failure to Protect**

The allegations of failure to protect are numerous. First Plaintiff contends that he should not have been assigned to cell with Hall because the later posed a known threat to his safety. Second, it is alleged that after Hall voiced suicidal and homicidal intentions Plaintiff should not have been returned to the same cell by Howson. Third, Lieutenant Seeba purportedly failed to protect Plaintiff's safety by not opening the cell door and immediately intervening during the assault. Fourth, Psychologist Mink purportedly placed Plaintiff's in harm's way by falsely describing him as being a sex offender.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively *serious* risk to

a prisoner's health or safety.  See Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to violence at the hands of another prisoner. Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).

Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability.  Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).  The *victim*'s custodian is exposed to civil rights liability only when "he knows or should have known of a sufficiently serious danger to [the] inmate."  Young, 960 F.2d at 361; see also Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984); Mosby v. Mabry, 697 F.2d 213, 215 (8th Cir. 1982).  The requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Third Circuit Court of Appeals has "stress[ed], however, that in constitutional context 'should have known' is a phrase of art with a meaning distinct from its usual meaning in the context of the law of torts."  Young, 960 F.2d at 361.  As our Court of Appeals explained the phrase, "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence." Colburn v. Upper Darby Township, 946 F.2d 1017, 1025 (3d Cir.

13

1991).  Instead, "[i]t connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk."  Id.  Moreover, "the risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges."  Id. Consequently, liability only attaches when there is a "pervasive risk of harm to inmates from other prisoners,[7] . . . and that the prison officials have displayed 'deliberate indifference' to the danger."  Riley, 777 F.2d at 147.

## Cell Assignment

Plaintiff contends that defendants failed to protect his safety because he was assigned to be celled with Inmate Hall, a Gangster Disciples gang member.  Porter asserts that prison officials were aware that he was to be not be housed with "any Muslims, any Gangster Disciples, any Crips, any Bloods, any Vice Lords, or any Washington D.C. inmates."  Doc. 14, p. 4.

A declaration under penalty of perjury by Special Investigative Agent Heath provides that a review of Bureau of Prison (BOP) records shows that during the relevant time period Inmate Hall had "no gang affiliations."  Doc. 36-2, Exhibit 1, ¶ 4. Moreover, Hall identified as being a Protestant while Porter was listed as being a Muslim (thus raising the issue as to why

---

7.  The Court of Appeals for the Third Circuit has noted that "prison officials should, at a minimum, investigate each allegation of violence or threat of violence."  Young, 960 F.2d at 363 n.23.

Plaintiff felt the need to be separated from other Muslims).[8] See id. at ¶ 5. Furthermore, Hall was not from Washington D.C. but rather hailed from the State of Florida. See id. at ¶ 6.

Furthermore, a sworn declaration by USP-Lewisburg Case Management Coordinator J. Reibsome indicates that a review of BOP records shows that "Inmates Porter and Hall were not listed as Separations prior to the January 15, 2012 incident." Doc. 36-2, Exhibit 3, ¶ 5.

Based upon those undisputed facts, there is no basis for a claim that Hall and Porter were improperly celled together. Accordingly, Defendants are entitled to summary judgment with respect to any claim that they intentionally failed to protect Plaintiff's safety by assigning Inmate Hall to be his cell mate. Since there are no assertions that Defendants Heath and Edinger were involved in the remaining assertions of failure to protect, summary judgment will be granted in their favor.

**Howson**

On January 9, 2012, Hall refused to allow Porter reentry into the cell they shared together. Case Manager Metzger initially responded to the incident and spoke with Hall. Plaintiff contends that Hall told Metzger that he was suicidal and homicidal. As a result, Metzger properly requested that Psychologist Howson evaluate Hall.

_____

[8] Institutional records submitted by Defendants show that Hall has listed multiple religions while incarcerated. See Doc. 36-2, Attachment C.

Hall allegedly told Howson that he would kill his cell mate because he found out Plaintiff was a sex offender if he was placed backed into their cell. See Doc. 14, p. 6. Despite that threat, Plaintiff was placed back into the cell based upon Howson's determination that Hall did not pose a threat. It is alleged that Howson failed to follow proper prison procedure and should have had Hall transferred to an observation cell. On January 15, 2012, Plaintiff was assaulted by Hall.

Defendant Howson has submitted a declaration under penalty of perjury acknowledging that on January 9, 2012 she performed a suicide risk assessment on Inmate Hall pursuant to a request by Correctional Counselor Metzger. See Doc. 36-3, Exhibit 4.

According to Howson, Hall stated that he no longer wanted to live with Porter because his cell mate engaged in excessive masturbation and was not from the southern part of the country. Howson notes that Hall had "a history of making suicidal gestures for secondary gain." Id. at ¶ 4. The Defendant notes that she did not recall Hall making any homicidal statements during the suicide risk assessment. Howson further opines that Hall had previously employed a suicide risk assessment to obtain a cellblock change. Based on her evaluation, Howson determined that the inmate did not need to be placed on suicide watch as "Hall was not at imminent risk for self-harm and that he did not show any genuine mental health concerns." Id.

Four days later, on January 13, 2012 (two days before the assault), Howson states that she performed a monthly psychological

16

assessment of Hall and similarly concluded that "Hall's mental status did not suggest any mental health problems and the threat to himself and others appeared to be low." Id. at ¶ 5. Howson adds that she did not meet with either Porter or Hall on January 15, 2012.

It is also noted that a January 17, 2012 clinical note authored by Douglas Contri, USP-Lewisburg Speciality Program Coordinator indicates that Plaintiff stated that prior to the January 15, 2012 attack there had not been any conflicts between he and Hall and that his cell mate told him that the attack was nothing personal that he just wanted to live with someone from his own geographical area. See Doc. 38, p. 29. This statement bolsters Howson's determination that Hall was not suicidal but also arguably supports a determination that the inmates should have been separated.

There are no factual contentions set forth in the Amended complaint which could support a claim that Howson had any preexisting reason to intentionally placed Plaintiff in harm's way. Furthermore, a complaint that a physician "has been negligent in diagnosing or treating a medical condition" does not state a valid constitutional claim. Estelle v. Gamble, 429 U.S. 97, 106 (1976). An error in medical judgment does not state a constitutional violation. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Similarly, mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to civil rights liability. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

However, the determination by Howson to leave Plaintiff and Hall housed together in the same cell after the January 9, 2012 incident proved to be ill advised. Although Howson may have correctly determined that Hall was not a risk for suicide, there is still the issue of whether said defendant was deliberately indifferent by not determining that Hall posed a threat to Plaintiff's safety which warranted their immediate separation. While this Court has been provided with some written institutional reports pertaining to the January 15, 2012 incident none have been provided regarding the January 9, 2012 event. Thus, it is unclear as to whether Hall was issued a disciplinary charge for his refusal to allow Porter back into their cell on said date and/or whether Howson prepared a written report of his assessment of Hall pertaining to the January 9, 2012 incident.[9] It is also unknown as to whether Defendant Metzger prepared a written report relating to Hall's conduct on said date.

It appears that the failure to protect claim against Howson may be entirely premised upon conduct which at best amounts to negligence and therefore cannot be properly pursued in a federal

---

[9] While this Court recognizes that there are privacy concerns at issue regarding Inmate Hall, the failure of Defendants to submit Howson's actual written note pertaining to her assessment of Hall on January 9, 2012 is troubling given that Plaintiff and Hall were both confined in the prison's SMU and that the written assessment is arguably the most important document pertaining to the claim against her.

It is noted that the Court has received a copy of a May 14, 2012 suicide risk assessment of Porter prepared by Howson (Doc. 38, Attachment A, p.13), thus, indicatiing that written suicide assessment reports are indeed prepared.

civil rights action. However, in light of the concerns expressed above, there are still some outstanding issues of disputed material fact as to whether Howson acted with deliberate indifference to an apparent risk of harm on January 9, 2012. Defendant Howson's request for summary judgment will be denied at this juncture.

**Mink**

Plaintiff indicates that Psychologist Mink previously filed a false report (later corrected) which described him as being a sex offender. Despite the retraction, there was allegedly an unfounded rumor in the SMU that Porter was a sex offender. Plaintiff indicates that the attack by Hall was based on the cell mate's belief that he was a sex offender.

Defendants, relying under a declaration under penalty of perjury by Psychologist Mink, acknowledge that Mink "mistakenly noted" that Plaintiff had a history of assaulting female staff on March 24, 2011. Doc. 33, p. 46. The mistake was rectified on November 3, 2011 when Mink made a clarifying statement in Plaintiff's institutional records admitting that there was no documentation of sexual assault in Porter's background.

The Defendants add that Mink's erroneous note was solely made in Plaintiff's institutional mental health records which are only accessible to the prison's Psychology and Health Services staff and not the inmate population. Given that limited access and subsequent retraction, Defendants maintain that there was no intentional effort by Mink to Place Plaintiff's safety at risk.

It is noted that a prisoner's disagreement with "evaluations

19

and opinions regarding him" are insufficient to set forth an actionable constitutional claim. Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979). Likewise, mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson, 474 U.S. at 347-48.

Second, a January 17, 2012 clinical note authored by Douglas Contri, USP-Lewisburg Speciality Program Coordinator indicates that Plaintiff himself stated that the attack was nothing personal and that Hall just wanted to live with someone from his own geographical area. See Doc. 38, p. 29. Porter's statement to Contri clearly undermines his pending claim that Hall's attack was caused by Mink's prior erroneous determination that Plaintiff was a sex offender.

There is also evidence that Hall told prison officials that he couldn't live with Plaintiff any longer because Porter was frequently masturbating. This statement would support a conclusion that any opinion by Hall regarding his cell mate's sexual behavior was the result of the prisoner's own observation rather that a jailhouse rumor based upon a retracted notation made by Mink in confidential mental health records. Finally, there are no facts presented which could support a conclusion that the notation by Mink which was retracted approximately two months earlier was passed onto Hall and served as motivation for the January 15, 2012 assault.

Rather, the failure to protect claim against Mink appears to be solely the result of Plaintiff's own speculation and not

supported by any facts.  Mink's request for entry of summary judgment will be granted.

**Seeba**

Plaintiff's final allegation is that Lieutenant Seeba failed to adequately protect his safety on January 15, 2012. Specifically, the Amended Complaint contend that although Seeba and his crew stood at the cell door and applied chemical agents due to the gravity of the situation they should have opened the cell door and immediately physically intervened because Plaintiff was being suffocated.

Seeba has submitted a declaration under penalty of perjury stating that he cell door was not opened "because I did not believe the inmates could be safely approached and Inmate Hall was utilizing a mattress as a weapon/barricade."  Doc. 36-2, ¶ 6. Seeba adds that the use of chemical agents was successful in getting both prisoners under control and allowing staff to safely enter the cell.  An accompanying memorandum authored by Seeba acknowledges that he witnessed Hall trying to suffocate Porter with a mattress.  See id. at Attachment A.

A declaration under penalty of perjury by Defendant Heath indicates that a written Report of Incident form report and attachments for the January 15, 2012 incident (identified as being Attachment F) exists but has not been submitted.  Heath also indicates an action review written report of the use of force of force on January 15, 2012 (described as Attachment G) exists but has not been submitted.  Furthermore a videotape debrief following

the immediate use of force January 15, 2015 incident (identified as Attachment H) also exist and has not been submitted.

Furthermore although Defendants have provided a copy of an incident report issued to Hall as a result of the attack, the outcome of the cell mate's disciplinary proceedings is unknown. Finally, although other prison personnel were apparently present at the incident, no other supporting declarations, statements have been provided.

Based upon the liberal treatment afforded to pro se pleadings, the absence of sufficient documentary evidence relating to the incident, the undisputed fact that Hall was attempting to suffocate the Plaintiff with a mattress, there are some outstanding issues of material fact which preclude entry of summary judgment at this time. The failure to protect claim against Lieutenant Seeba will be allowed to proceed.

**Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity. Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99

(3d Cir. 1997); <u>Showers v. Spangler</u>, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." <u>People of Three Mile Island v. Nuclear Regulatory Commissioners</u>, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims.  <u>See also Curley v. Klem</u>, 298 F.3d 271 (3d Cir. 2002); <u>Bennett v. Murphy</u>, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." <u>Bennett</u>, 274 F.3d at 136.  The second prong requires a determination as to whether the constitutional right at issue was clearly established.  If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 201.  A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Based upon the reasons et forth herein, there are outstanding issues of material fact which presently preclude a determination as to whether Remaining Defendants Seeba and Howson are entitled to qualified immunity.  Accordingly, this request for summary judgment will be dismissed without prejudice as premature.  The parties will

be granted opportunity to submit additional dispositive motions. An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 18th, 2015