UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAREN PORTER,                      :
    Plaintiff              :
                                   :
  v.                               :       CIVIL NO. 3:CV-14-105
                                   :
                                   :       (Judge Conaboy)
J. HOWSON ,ET AL.,                 :
    Defendants             :
_____

# **MEMORANDUM**
## **Background**

Daren Porter, an inmate presently confined at the Federal Correctional Institution, Terre Haute, Indiana initiated this pro se Bivens[1]-type civil rights action. Plaintiff's action regards his prior confinement at the United States Penitentiary Lewisburg, Pennsylvania (USP-Lewisburg). An Amended Complaint (Doc. 14) was previously filed.

By Memorandum and Order dated September 28, 2015, Defendants' motion for summary judgment was partially granted. Specifically, summary judgment was granted in favor of Defendants Lieutenant Johnson; Case Manager Nicholas; Case Manager Metzger;

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

1

Special Investigative Agent Suzanne Heath; Counselor Matt Edinger; and Psychologist Mink. Sua sponte dismissal was granted in favor of Defendant Inmate George Hall.

Remaining Defendants are two USP-Lewisburg officials: Psychologist Janet Howson and Lieutenant Randy Seeba. Plaintiff's surviving claims are that (1) Defendant Lieutenant Seeba failed to protect Plaintiff's safety on January 15, 2012; and (2) Defendant Howson failed to protect Porter's safety on January 9, 2012.

According to the Amended Complaint, Plaintiff was housed in a single cell within the USP-Lewisburg Special Management Unit (SMU)in January 2012. During this time period, Porter was recovering from a broken jaw and his jaw was wired shut. He was also on pain and "psych" medication which purportedly rendered him unable to defend himself from other prisoners. Doc. 14, p. 5.

Porter refused to accept a cellmate who was a known member of the Gangster Disciples gang because he was to be not be housed with "any Muslims, any Gangster Disciples, any Crips, any Bloods, any Vice Lords, or any Washington D.C. inmates." Doc. 14, p. 4. Eventually prison officials agreed that the Gangster Disciple member would not be moved into his cell.

A few days later, Porter was placed in a cell with Inmate George Hall. On January 9, 2012, Hall allegedly told Psychologist Howson that he felt "homicidal and suicidal" and that because he had discovered that Plaintiff was a sex offender he would kill his

2

cellmate if the prisoner was returned to their cell.[2]  Id. at p. 6. Despite this threat, Plaintiff was placed back into the cell based upon Howson's evaluation.  The Amended Complaint contends that Howson failed to follow proper prison procedure and should have had Hall immediately transferred to an observation cell.

On January 15, 2012, Plaintiff was allegedly attacked by Hall.  During the attack, Plaintiff's nose and ear were partially bitten off and he also suffered a broken jaw and rib.[3]  See id. at p. 7.  Lieutenant Seeba responded to the incident with other officers.  Inmate Hall refused an order by Seeba to submit to restraints and then attempted to smother the Plaintiff with a mattress.  Although Hall continued his assault, Seeba allegedly refused to allow the cell door to be opened.  Rather, Defendant Seeba elected to disperse multiple rounds of tear gas/pepper spray into the cell.  The Amended Complaint seeks an award of compensatory and punitive damages.

Presently pending is Remaining Defendants' motion for summary judgment.  See Doc. 60.  The opposed motion is ripe for consideration.  Also pending is the Remaining defendants' motion for a protective order.

---

[2] Porter states that there was an unfounded rumor in the SMU that he was a sex offender.

[3] See also 38, p. 28.

**Discussion**

**Rule 56**

Several months after briefing on the pending summary judgment motion concluded, Plaintiff served the two Remaining Defendants with multiple discovery requests.  See Docs. 82-86.  Howson and Seeba have responded with a motion seeking issuance of a protective order.  Plaintiff asserts that the Remaining Defendants' motion should be denied under Federal Rule of Civil Procedure Rule 56.[4]

The United States Supreme Court has recognized that premature motions for summary judgment should be dealt with pursuant to the provisions of Rule 56 if the opposing party has not made full discovery.  Celotex v. Catrett, 477 U.S. 317, 326 (1986).  Specifically, Rule 56(d) provides that when facts are unavailable to the nonmovant:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may;
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Thus, a district court has discretion to decide whether a party's summary judgment motion is ripe.  Sames v.

---

[4] This Court has three options upon the filing of a Rule 56(d) request "'either to deny the motion for summary judgment, grant a continuance, or issue any other just order.'" Brown v. Beard, 371 Fed. Appx. 257, 262 (3d Cir. 2010).

Gable, 732 F.2d 49, 51 (3d Cir. 1984).

In order to preserve the issue for appeal, Rule 56(d) requires the opposing party to a motion for summary judgment to file an affidavit or declaration outlining the reasons for the party's opposition. See Galgay v. Gil-Pre Corp., 864 F.2d 1018, 1020 n.3 (3d Cir. 1988). If an opposing party makes a Rule 56(d) motion without an affidavit, the United States Court of Appeals for the Third Circuit has stated that the opposing party "must still `identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994). The opposing party, however, must be specific and provide all three types of information required. See e.g., Radich v. Goode, 886 F.2d 1391, 1394-95 (3d Cir. 1989) (affirming district court's grant of summary judgment when the opposing party only identified several unanswered interrogatories and failed to file an affidavit, identify how the unanswered interrogatories would preclude summary judgment, or identify the information sought).

It is initially noted that the Plaintiff was provided with an abundance of time in which to both pursue discovery in this matter and file a response to the pending summary judgment motion. Second, this is not a case where a litigant responded to a summary judgment motion by filing a Rule 56(d) motion, rather, the

5

Plaintiff waited months after opposing the pending summary judgment motion, before even serving the discovery requests at issue and did not even raise his request for Rule 56(d) relief until after the request for a protective order was filed. Third, a review of Porter's pending discovery requests show that he is seeking materials that are either irrelevant or which have already been provided to this Court in support of the pending summary judgment motion.

Furthermore, Plaintiff has not provided a sufficient Rule 56(d) affidavit or otherwise complied with Surin. Based upon those considerations Plaintiff's request for relief under Rule 56 will be denied.

**Summary Judgment**

Remaining Defendants assert that they are entitled to entry of summary judgment because the record does not support the failure to protect claims and they are entitled to qualified immunity.

As previously discussed by this Court's September 28, 2015 Memorandum and Order, summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.

6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

    Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d

7

at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Failure to Protect**

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to violence at the hands of another prisoner. Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).

Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). The victim's custodian is exposed to civil rights liability only when "he knows or should have known of a sufficiently serious danger to [the] inmate." Young, 960 F.2d at 361; see also Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984); Mosby v. Mabry, 697 F.2d 213, 215 (8th Cir. 1982). The requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Third Circuit Court of Appeals has "stress[ed], however, that in constitutional context 'should have known' is a phrase of

8

art with a meaning distinct from its usual meaning in the context of the law of torts." Young, 960 F.2d at 361. As our Court of Appeals explained the phrase, "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence." Colburn v. Upper Darby Township, 946 F.2d 1017, 1025 (3d Cir. 1991). Instead, "[i]t connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk." Id. Moreover, "the risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." Id. Consequently, liability only attaches when there is a "pervasive risk of harm to inmates from other prisoners,[5] . . . and that the prison officials have displayed 'deliberate indifference' to the danger." Riley, 777 F.2d at 147.

**Howson**

On January 9, 2012, Inmate Hall refused to allow Porter reentry into the cell they shared together. Case Manager Metzger initially responded to the incident and spoke with Hall. Plaintiff contends that Hall told Metzger that he was suicidal and homicidal. As a result, Metzger properly requested that Psychologist Howson perform a suicide risk assessment on Hall.

Plaintiff contends that Hall allegedly told Howson that he

---

    5.  The Court of Appeals for the Third Circuit has noted that "prison officials should, at a minimum, investigate each allegation of violence or threat of violence." Young, 960 F.2d at 363 n.23.

9

would kill his cell mate because he found out Plaintiff was a sex offender if he was placed backed into their cell.  See Doc. 14, p. 6.  Despite that threat, Plaintiff was placed back into the cell based upon Howson's determination that Hall did not pose a threat. It is alleged that Howson failed to follow proper prison procedure and should have had Hall transferred to an observation cell.  On January 15, 2012, Plaintiff was assaulted by Hall.

As previously noted by this Court's September 28, 2015 Memorandum, there are no factual contentions set forth in the Amended Complaint which could support a claim that Howson had any preexisting reason to intentionally placed Plaintiff in harm's way. However, with respect to the issue of whether said Defendant was deliberately indifferent by not determining that Hall posed a threat to Plaintiff's safety which warranted their immediate separation the Memorandum noted that the failure of Defendants to submit Howson's actual written notes pertaining to her assessment of Hall on January 9, 2012 was troubling given that Plaintiff and Hall were both confined in the prison's SMU and that the written assessment is arguably the moat important document pertaining to the claim against her.

Defendant Howson has submitted a supplemental declaration under penalty of perjury acknowledging that on January 9, 2012 she was employed as an SMU Psychologist at USP-Lewisburg and was requested by Correctional Counselor Metzger to perform a suicide risk assessment on Hall.  See Doc. 69.  According to Howson, Inmate Hall stated that he no longer wanted to live with Porter because

10

his cell mate engaged in excessive masturbation and was not from the southern part of the country. Howson notes that Hall had "a history of making suicidal threats for secondary gain." Id. at ¶ 5. In particular, on two prior occasions Hall threatened to commit suicide in order to obtain a cell change and a different cell mate.[6]

Howson notes that the purpose of her evaluation was to determine if Hall's suicide threat was genuine. She determined that the inmate did not need to be placed on suicide watch as "Hall was not at imminent risk for self-harm and that he did not show any genuine mental health concerns." Id. at ¶ 6. Her evaluation was compiled into a report which was made part of Inmate Hall's mental health records.

Howson adds that Hall did not make any homicidal or threatening statements during the suicide risk assessment. She adds that if such remarks had been made they would have been noted in her report and she would have recommended that the prisoners be separated.

On January 13, 2012 (two days before the assault), Howson states that she performed a monthly SMU psychological review of Hall and similarly concluded that "Hall's mental status did not suggest any mental health problems and the threat to himself and others appeared to be low." Id. at ¶ 5. Howson adds that she did not meet with either Porter or Hall on January 15, 2012. Finally,

---

[6] On both occasions, Howson notes that Hall did not assault his cellmate.

11

Howson notes that here was no institutional policy requiring that an inmate be removed from his cell for performance of a suicide risk assessment. Written copies of the above referenced assessments which have been submitted in camera confirm Howson's descriptions.

A January 17, 2012 clinical note authored by Douglas Contri, USP-Lewisburg Speciality Program Coordinator indicates that Plaintiff stated that prior to the January 15, 2012 attack there had not been any conflicts between he and Hall and that his cell mate told him that the attack was nothing personal that he just wanted to live with someone from his own geographical area. See Doc. 38, p. 29. This statement bolsters Howson's determination that Hall was not suicidal and was simply engaged in a manipulative effort to obtain a new cell mate.

The evidence submitted in support of Howson's pending summary judgment motion clearly satisfies the concerns outlined by this Court's September 28, 2015 Memorandum and Order. According to the undisputed record, Howson made a well reasoned determjination that Hall was not a risk for suicide and did not pose a discernible threat to others.

More importantly, the undisputed documentary evidence shows that: (1) Inmate Hall had made two prior similar suicide threats for the purpose of getting a new cellmate; (2) Howson was aware of those prior incidents when undertaking her assessment; (3) those earlier similar threats did not result in injury to either Hall or the cell mates, (4) there was no prison policy which mandated

12

Inmate Hall's immediate removal and placement in an observation cell; (5) the assault against Porter did not take place until six days later; and (6) Howson sworn testimony that Hall did not make any homicidal or threatening remarks towards the Plaintiff, the failure to protect claim against Howson at best constituted conduct which was negligence which under Davidson is a claim not properly pursued in a federal civil rights action.[7]

**Seeba**

Plaintiff's remaining allegation is that Lieutenant Seeba failed to adequately protect his safety on January 15, 2012. Specifically, the Amended Complaint contend that although Seeba and his crew stood at the cell door and applied chemical agents due to the gravity of the situation they should have opened the cell door and immediately physically intervened because Plaintiff was being suffocated.

Seeba has submitted a declaration under penalty of perjury stating that based upon his experience and knowledge and in accordance with post orders and policy the cell door was not opened "because I did not believe the inmates could be safely approached and Inmate Hall was utilizing a mattress as a weapon/barricade." Doc. 71-1, p. 29, ¶ 6. Seeba adds that the use of chemical agents was successful in getting both prisoners under control and allowing staff to safely enter the cell. An accompanying written memorandum

---

[7] It is also noted that a prisoner's disagreement with "evaluations and opinions" are insufficient to set forth an actionable constitutional claim. Paine v. Baker, 595 F.2d 197, 201 (4th Cir.), cert. denied, 444 U.S. 925 (1979).

13

authored by Seeba acknowledges that he witnessed Hall trying to suffocate Porter with a mattress. See id. at p. 31.

A copy of the written incident form report for the January 15, 2012 incident has been submitted. See id., p. 9. It lists all the corrections staff members who were present and confirms that multiple rounds of pepper spray were employed against Inmate Hall. The Court has also been provided with a videotape, written medical assessment and photographs showing the wounds (significant injury to the inmate's nose and ear) suffered by Porter as well as Seeba's description of the action taken. A copy of an after action review report prepared regarding the incident has also been submitted. See id. at p. 26.

In addition, copies of prison post orders and BOP policy concerning emergency response clearly provide that if there is an ongoing altercation within a cell the on scene lieutenant must make a determination as to whether the prisoners may be approached without danger to self or others. See id. at pp. 34 & 51. If it is determined that a cell door cannot be opened the use of pepper spray is authorized. Other prison personnel who present at the incident have also provided declarations and copies of their written statements regarding the incident. Those submissions clearly support Seeba's version of the events at issue.

Remaining Defendants have also provided a copy of an incident report issued to Hall as a result of the attack. Finally, a declaration under penalty of perjury by USP-Lewisburg Attorney Jennifer Knepper states that Hall was found guilty of the charge of

14

assaulting Porter with serious injury and received multiple sanctions including a 41 day loss of good conduct time. See id. at p. 73, ¶ 3.

Based upon a review of the documentary evidence relating to the incident, the Remaining Defendants have addressed and satisfied the questions raised by this Court's September 28, 2015 Memorandum with respect to the claims against Lieutenant Seeba.

As noted in Colburn, a failure to protect claim requires more than a negligent failure to appreciate a risk of harm. Application of that standard to Plaintiff's allegations reveals that his Amended Complaint has not asserted any conduct by Defendant Seeba that could be construed as deliberate indifference. Under the standards announced in Farmer and Riley, the Plaintiff has not adequately shown that he was purposefully exposed to a pervasive risk of harm. Rather, the undisputed record shows that Lieutenant Seeba responded to the situation in a timely manner and acted in accordance with prison policy and based upon his own experience and knowledge. The fact that Seeba elected to employ pepper spray before allowing correctional staff to enter the cell was simply a spur of the moment judgment call which at best constituted negligence.[8] Seeba's request for entry of summary judgment will be granted.

---

[8] It is further noted that the undisputed facts indicate that the serious injuries inflicted upon the Plaintiff occurred prior to Seeba's arrival at the cell and were not the result of a failure to immediately enter the cell.

15

**Qualified Immunity**

Remaining Defendants also argue that they are entitled to qualified immunity. Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).

It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)). The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second

16

prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Assuming arguendo that it was determined that a clearly established constitutional right was violated, the undisputed facts do not support a conclusion that it would be clear to a reasonable officer that the challenged conduct of the Remaining Defendants was unlawful. Rather, the undisputed facts would warrant a finding that Seeba and Howson are entitled to qualified immunity since their challenged decisionmaking was not an intentional attempt to place Plaintiff in harm's way. Pursuant to the above discussion, the request for summary judgment will be granted. An appropriate Order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 14 , 2016

17